# William Atkins and S. B. Briscoe, Receivers of the Pottsville Iron & Steel Company, *v.* George F. Payne and Charles G. Wetter, copartners, trading as George F. Payne & Company, Appellants.

*Evidence—Receipts—Estoppel.*

Receipts are open to explanation between the original parties and others not acting to their injury upon the faith of them, but, to the extent of such action and any consequent injury, the persons who give the receipts will be conclusively estopped from disputing the validity of their own writings made for the purpose of being shown to induce action.

Where contractors guarantee a material man for materials furnished to a subcontractor, and require the subcontractor to submit to them receipts from the material man before they will make payments to the subcontractor on their own contract with him, the receipts are conclusive in favor of the contractors; and in an action on the guaranty the contractors may show that, relying upon the receipts, they made payments to the subcontractors, which otherwise they would not have made.

Argued Jan. 12, 1899. Appeal, No. 248, Jan. T., 1898, by defendants, from judgment of C. P. No. 1, Phila. Co., June T., 1897, No. 74, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit upon a guaranty. Before BRÉGY, J.

At the trial it appeared that defendants had a contract to erect a building in the city of Philadelphia. Keen & Co. were subcontractors for furnishing the structural iron and steel work which they purchased from the plaintiffs. Defendants guaranteed the payment of the material furnished to Keen & Co. For their own protection they required Keen

& Co. to produce to them receipts for money paid to the plaintiffs. Two receipts from plaintiffs to Keen & Co., one for $7,000 and the other for $4,000, were exhibited to the defendants who alleged that, relying upon the correctness of the receipts, they paid Keen & Co. $2,500.

Under objection and exception the trial court permitted the plaintiffs to show that at the time the receipts were given the amount which they represented had not been paid. [1] The giving of the receipts for money which was not actually paid was thus explained by plaintiffs: In order to enable them to realize cash upon deliveries as made, it was agreed that time drafts should be drawn by them upon Keen & Co., who should accept them; and they should be discounted by the bank for plaintiffs, and Keen & Co. should pay them at maturity; and as defendants required the production of receipts from plaintiffs before making payments to Keen & Co., it was agreed that plaintiffs would, in advance of the payment of the acceptances, give receipts for the amounts required to meet them. These receipts Keen & Co. were then to take to defendants and collect the money to meet the acceptances as they fell due. Under these circumstances, on August 15, 1896, although no money was paid, a receipt was given for $7,000, in order to enable Keen & Co. to draw from defendants the moneys to meet maturing acceptances. The receipt for $4,000 followed the same course of dealing.

Mr. Wetter, one of the defendants, in direct examination, testified:

"Q. You had the contract for the construction of this building? A. Yes, sir. Q. You built it? A. Yes, sir. Q. And completed it? A. Yes, sir. Q. Keen & Co. furnished the iron? A. Yes, sir. Q. This is your guarantee to pay the receiver? A. Yes, sir. Q. Did you pay Keen & Co. from time to time? A. Yes, sir. Q. From time to time did Keen & Co. produce to you those receipts? A. They did. Q. Did you believe those receipts to be true? A. Yes, sir. Q. Did or did not Payne & Co., after receiving those receipts, make other payments? A. We did. Q. Did you or did you not make larger payments than you otherwise would have done? A. Yes, sir."

Objected to. Objection sustained.

"Q. Will you take the receipt book and state what payments

you did make from time to time? A. On June 16, 1896, we paid $650—"

Objection to any evidence of payments except such as were made after the production of those receipts, and on those contracts. Objection sustained.

"Q. I show you two receipts, one dated August 15, 1896, for $7,000, and the other dated a month later, September 15, 1896, for $4,000, and I ask you whether you did make any payments after the receipt by you of those two receipts, and whether the payments so made were or were not induced and made because of those receipts. A. We made a payment on September 21, 1896, of $2,500. Q. And is this the check with which you made it? A. Yes, sir; we also made a payment on March 25, 1897, of $900. Q. You have seen and have produced the letter of the receivers to Keen & Co., in which they state that the agreement was that the receipts should be produced before you made payments. Was that the agreement? A. That was certainly a positive understanding. I don't know that there was a positive agreement to that point, but I refused, positively, to pay Mr. Keen any money until receipts were produced, first showing that the receipts were produced for the checks I had given him the month before. Q. Would you or would you not have made those payments, subsequent to those receipts, if you had not believed that the payments were made? A. We would not."

Objected to.

"Q. This is the check for $900 that you refer to? (Handing witness check.) A. It is. Q. I now ask you whether you have or have not paid Keen & Co. as much money as your guarantee to the receivers calls for?"

Objected to. Objection sustained.

"Q. Were there other payments which you made on the faith of their receipts?"

Objected to. Objection sustained.

"Q. Taking the statement of the witness upon the stand that $2,500 was received by them on September 2, 1896, I ask you if it is not true that if they received from Keen & Co. the $2,500 on September 2, with the check which you have produced of September 21, and the receipts which they claim are true, if the receivers have not been overpaid?"

Objected to. Objection sustained.

"Q. Will you state the amount of money that has been received by the receivers, taking the two receipts to be correct, $7,000 and $4,000, and taking the subsequent payments made by you to Keen & Co., of $2,500, made after the production of their receipts, and of the $900 after the production of their re-ceipts?"

Objected to. Objection sustained. Exception for defendants.

Defendants offer in evidence all of the checks paid by them to Keen & Co., subsequent to the production of the first reeeipt of $7,000.

Objected to. Objection sustained. Exception for defendant.

By the Court, to witness Wetter: "Q. There has been produced here a receipt for $4,000. Mr. Keen says you did not pay $4,000, but only gave $2,500. Is that so or not? A. Well, they produced a receipt, your Honor, showing that they had, previous to that time, over $11,000 out. That made $11,000. Q. Of that $4,000, how much of it did your firm pay to Keen & Co.? A. On that particular day we paid $2,500, but prior to that we had already paid a portion of that $4,000. Q. But you had never paid the whole of the $4,000? A. I think we had. Q. Well, look and see. You heard Mr. Keen's version of that $4,000, didn't you? A. Yes, sir. Q. Was that accurate or not? A. For that date it was all right. We only paid $2,500, but we had paid before. Q. Is Mr. Keen's account of that correct, or do you differ with him? A. I differ with him. Q. Well, what is your difference? A. That we had previously made payment to Mr. Keen, covering more than that difference between $2,500 and $4,000. Q. That is, you had paid him $4,000 on this account of Atkins on this building? A. Yes, sir."

Plaintiffs object to any evidence of any payments that were made prior to the production of this receipt of $4,000, and ask to have all testimony stricken out as to prior payments.

By the Court: Objection sustained. Exception for defendants.

Verdict and judgment for plaintiffs for $2,928.44. Defendants appealed.

*Errors assigned* among others were (1, 5) rulings on evidence, quoting the bill of exceptions.

*Robert Alexander,* of *Alexander & Magill,* for appellants, cited Eldred v. Hazlett, 33 Pa. 307.

*V. Gilpin Robinson,* with him *John M. Strong,* for appellees, cited Megargel v. Megargel, 105 Pa. 475; Foster v. Beals, 21 N. Y. 247; Eshelman's Est., 143 Pa. 25.

OPINION BY MR. JUSTICE MITCHELL, February 13, 1899:

This was an action on a guarantee. The plaintiffs and Keen, the principal debtor, agreed on the amount due by the latter to the former, and there is no dispute as to it. But the defense is that plaintiffs gave Keen receipts which misled defendants by showing larger payments by Keen than had been actually made, and that plaintiffs are thereby estopped. The principal error alleged by appellant, therefore, is that the court permitted plaintiffs to explain and in a manner contradict their own receipts.

The claim of appellants is too broad. The receipts were not per se estoppels. Like other receipts they were open to explanation between the original parties and others not acting to their injury upon the faith of them. But to the extent of such action and any consequent injury, plaintiffs would be conclusively estopped from disputing the validity of their own writings made for the purpose of being shown to induce action. The learned judge was therefore correct in his view that defendants were bound to show that they had been injured by reliance on the receipts. Without such showing the most important element of estoppel was wanting.

But the judge fell into error in restricting the defendants in their effort to prove the injury. As a necessary first step in that direction they should have been permitted to show how much they had paid Keen. They were guarantors on Keen's contract for about $13,900 with plaintiffs, and it is the testimony of both parties that defendants, apparently for their own protection, required Keen to produce vouchers for the state of his accounts with plaintiffs, before defendants would make payments to him on their own contract with him. Such vouchers

were produced in the form of the receipts in question, admittedly made by plaintiffs for the purpose of enabling Keen to get payments from defendants. There is no evidence that the latter knew or had any reason to suppose that the receipts did not express the full and exact truth. Defendants were therefore entitled to rely upon these receipts as exhibiting the correct amounts of payments made and balance due by Keen to plaintiffs, and if so relying they made payments to Keen on their own contract with him, which they would not otherwise have done, and which resulted to their injury, plaintiffs would to that extent be estopped from disputing their receipts. The amounts and dates of defendants' payments to Keen were therefore relevant and material as the first step in the evidence to show injury. If, for illustration, it should appear that at the time of the presentation of the receipts defendants had already paid Keen say $11,000, and the receipts for $7,000 and $4,000 respectively induced them to believe that Keen had paid over the whole $11,000 to plaintiffs, and under that belief they paid Keen the additional $2,500, when otherwise they would have withheld it to secure themselves on their guarantee, they would have shown an injury which would entitle them to rely on the receipts, and would estop the plaintiffs from disputing that such receipts showed the true state of the accounts between themselves and Keen. Defendants should have been permitted to show if they could that this or something similar was the true state of affairs, so that the question of estoppel by the receipts could be determined upon full knowledge of the facts.

Judgment reversed and venire de novo awarded.