Gocs, Appellant, *v.* Coale's Distributing Lumber Co. et al.

Argued November 13, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*William S. Stein,* for appellant.

*Paul H. Ferguson,* with him *G. Mason Owlett,* for appellees.

OPINION BY CUNNINGHAM, J., December 18, 1940:

Prior to March 31, 1938, the deceased husband of claimant, Anthony Gocs, was in the employ of Thomas E. Coale Coal Company, a Delaware Corporation, of which Thomas E. Coale was president. On April 1, 1938, Coale's Distributing Lumber Company, a Pennsylvania Corporation, of which Thomas E. Coale is likewise president, took over the business of the Thomas E. Coale Coal Company and Gocs was automatically transferred to the employ of the successor company. The business of these coal and lumber companies is conducted at 26th Street and Susquehanna Avenue, Philadelphia, and Gocs was employed as "manager of the coal part of the business, that is, he handled the trucks, kept the trucks in repair as a mechanic, and saw that the coal was delivered"; his wages were $35 per week.

Mattie M. Coale, the wife of Thomas E. Coale, but who was neither an officer nor director of either corporation, owned a farm of approximately twelve acres, known as "Crestmont Farms," and located at Torresdale. Thomas E. Coale operated the farm upon which he raised fruit, grain, turkeys and chickens. On several occasions Coale sent Gocs to the farm to repair machinery, etc., for which services he occasionally and irregularly handed him five or ten dollars. Among other things, Gocs repaired a tractor used exclusively on the farm.

On April 2, 1938, Coale sent Gocs to the farm to try out the tractor and to grade a piece of ground adjoining the chicken house preparatory to constructing an addition to that building. While engaged in this work the tractor accidentally overturned and Gocs was killed. His widow filed a claim for compensation for herself and a minor child of the decedent by a former marriage.

It was conceded of record that decedent "was in the general employ of the Thomas E. Coale Coal Company and Coale's Distributing Lumber Company," and that the only issue in the case was "whether he was in the

course of [that] employment at the time he met his death." We therefore have a case in which the employee suffered a fatal accident away from the premises of his general employer. That fact, in and of itself, would not defeat claimant's right to compensation provided her husband was at the time of the accident engaged in the transaction of the business or affairs of his general employer. The applicable provision of Article III of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as re-enacted and amended by the Act of June 4, 1937, P. L. 1552, 77 PS §411, reads: "The term 'injury by an accident in the course of his employment,' as used in this article, shall ...... include ...... injuries sustained while the employee is engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere." It is well settled that a person may at one and the same time be in the general employ of one corporation or individual and in the special employ of another, and in such event must be dealt with for any accidental injury sustained in the particular employment as the servant of the special employer. Ordinarily, the underlying inquiry is: Who had the direction and control of the person injured at the time of the accident? Evidence as to who paid the wages of the employee may aid in ascertaining which employer is responsible for compensation, but it is not controlling. Cf. *Tarr v. Hecla Coal & Coke Co.*, 265 Pa. 519, 109 A. 224; *Sgattone v. Mulholland & Gotwals, Inc. et al.*, 290 Pa. 341, 138 A. 855; and *Bowser v. Milliron Construction Co.*, 93 Pa. Superior Ct. 34.

The controlling issue in the present case is whether at the time of the accident decedent was engaged in the furtherance of the business or affairs of the Coale's Distributing Lumber Company. Upon that issue the referee made, inter alia, and the board adopted, the following findings of fact which, as our examination of the record discloses, are sustained by competent evidence:

"On such occasions as the decedent was sent to the farm to perform work for Thomas E. Coale, who operated the farm, the Thomas E. Coale Coal Company charged Mr. Coale's individual account for the time lost by the decedent from his work at the coal company.

"On April 4, 1938, the treasurer of Coale's Distributing Lumber Company, who was also the treasurer of the Thomas E. Coale Coal Company ...... delivered to a member of claimant's family a check in the amount of $12, in payment for two days' salary [due] the decedent, April 1 and April 2; $6 of this bill was charged to the individual account of Thomas E. Coale for the services rendered by the decedent to Thomas E. Coale for April 2, 1938, he having been away from his work at the coal company the whole of that day."

A disallowance of compensation was entered by the referee. Upon claimant's appeal to the board the action of the referee was affirmed, subject to a slight amendment (not here important) of his conclusion of law, which, as amended, reads:

"Inasmuch as the decedent was in the employ of Thomas E. Coale individually and as an operator of the Crestmont Farms on April 2, 1938, and inasmuch as the decedent was not engaged in the regular business of the defendants, there is no liability imposed on the defendants for payment of compensation."

The court below, in an able opinion by ALESSANDRONI, J., dismissed claimant's exceptions to the action of the board and entered judgment in favor of the defendants and their insurance carrier; the present appeal is by the claimant from that judgment. Our conclusion is that it must be affirmed.

Under the uncontroverted evidence the farm was not connected in any way with the corporate business or affairs of either of the defendant corporations. It was operated by Thomas E. Coale for his individual profit; it was his private business and affairs in which decedent was engaged. The following excerpt from the

opinion of the court below correctly describes the situation: "Thomas E. Coale as an individual had the right to and did direct, supervise and control the decedent's activities. He owned the tractor which was being used by the decedent when he was killed. It must be borne in mind constantly that the employer of the decedent was Coale's Distributing Lumber Company, and the duties of the decedent in that employment were all confined to the coal yard, where he kept the trucks in repair and saw that the coal was delivered."

It is true, as noted by the court below, that this case presents a situation differing to some extent from the circumstances of the cases above cited, by reason of the fact that Thomas E. Coale was president of the defendant corporations and at the same time operated the farm in his individual and private capacity. In the cases to which we have referred the separation of the general and special employment was more pronounced because the special employer had no connection with the general employer. Upon this feature of the case we adopt the following excerpt from the opinion of the court below:

"It must be noted, however, that the general employer of the decedent was Coale's Distributing Lumber Company, a corporation, and not any individual. It is true that Thomas E. Coale was connected with the corporation as president, but in the operation of Crestmont Farms he acted as an individual. Approaching the problem in this light, it is clear that there is a definite separation of the general employer and the special employer, and that the decedent was a loaned [or perhaps more accurately a borrowed] employee working for a special employer at the time of the accident."

The facts of the case at bar distinguish it from *Smedley v. Frank & Seder Co. et al.*, 116 Pa. Superior Ct. 270, 176 A. 783, and *Keasey v. Mitzel Bros. et al.*, 135 Pa. Superior Ct. 460, 5 A. 2d 631, relied upon by counsel for claimant. In the former, Smedley, the un-

fortunate truck driver, had been directed by the superintendent of the defendant's store to haul the household goods of Uber, the store detective, to the latter's new home. In sustaining an award of compensation to the decedent's mother, KELLER, J., (now President Judge) pointed out:

"The hauling was done, not by *permission* of the defendant's superintendent, but by his *directions*. The superintendent of a store would, ordinarily, have authority to give such directions, and the employee would be required to obey. The evidence does not support a finding that the truck driver was lent to Uber, but rather that the superintendent, the man in authority, gave orders that the goods should be hauled. We cannot say that it was not to the interest of the employer and in furtherance of its business that its employee's goods should be promptly and safely carried and delivered to his new place of residence. Employers may properly do many acts of courtesy and service for their employees, and another employee, while doing them pursuant to directions, is not outside the scope of employment if they are *ordered* to be done, as distinguished from *permitted* to be done."

In the Keasey case the employers were partners and the partnership paid the wages of the employee and furnished the tools and materials with which he was working on a house owned by one of them at the time of the accident. It was held that it could reasonably be inferred that the doing of small jobs on their own properties was merely incidental to the plan under which the partnership business was conducted.

A case more nearly comparable to the one in hand is *Atherholt v. William Stoddart Co.,* 286 Pa. 278, 133 A. 504. There the deceased employee was in the regular employ as a chauffeur of the president of the defendant corporation. By direction of the president he, at times, went to the establishment of the corporation to assist in the business there conducted, but was paid

no wages by it. While engaged with other employees of the company in delivering goods, the fatal accident occurred. It was held that the injury was sustained as an employee of the corporation.

A full discussion of the meaning of the words "business" and "affairs" as used by the legislature in the above cited article of the statute will be found in *Zenker v. Zenker et al.*, 93 Pa. Superior Ct. 255. It was there held that the word "affairs" is used as practically analogous to "business" and as referring to the general operations carried on by an employer. See also definition and cases cited at pages 40 and 41 of *Bowser v. Milliron Const. Co.*, supra.

It is perfectly clear under the undisputed testimony upon this record that the injury was sustained off the premises of the defendant corporations and that the work in which claimant's husband was then engaged had no connection whatsoever with the business or affairs of his general employer.

Judgment affirmed.