G.A.G. Corp., Appellant, *v.* Auritt.

Argued March 27, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Norman C. Henss*, with him *Horace A. Davenport*, for appellant.

*Alfred O. Breinig, Jr.*, with him *Maurice M. Green*, for appellees.

OPINION BY JACOBS, J., November 16, 1973:

In this case a party in the position of a mortgagee appeals from an order of the lower court permitting another party to take possession of the mortgaged premises and from a summary judgment holding the mortgage lien discharged. The facts are as follows:

On September 25, 1964, Herbert and Esther Auritt mortgaged certain realty which they owned in Montgomery County, the mortgagees being Mr. Auritt's parents and the principal sum of the mortgage being $15,-000. The mortgage was shortly thereafter recorded. Two judgments, apparently not related to the mortgage, were subsequently entered against Herbert and Esther Auritt. By agreements between the mortgagors, mortgagees, and judgment creditors, the aforesaid mortgage was subordinated to the two judgment liens. As reproduced in the printed record, the subordination provisions in the two agreements provide that the subordination would "have the same force and effect as though the . . . [judgments] had been entered of record prior to the time of the execution, delivery and recording of the [m]ortgage . . ."[1]

---

[1] The following provisions of the two agreements relating to subordination are identical in wording and are reproduced here from the printed record:

"WHEREAS, it is the desire and intention of the parties hereto to postpone and subordinate the lien and operation of the Mortgage above recited, for the full balance thereof, and the Bond and Warrant accompanying the same, to the lien, operation and payment and distribution upon any judicial sale of and under the Judgment above recited, so that the said Judgment above recited shall and will become a first lien upon the said premises and the Mortgage above recited and the Bond and Warrant accompanying the same shall and will be postponed and subordinated thereto in every manner whatsoever . . ."

"Now THEREFORE, the parties hereto . . . agree, each with the others that the Mortgage above recited . . . and the Bond and Warrant accompanying the same be, and the same are by these presents

On September 9, 1968, the premises in question were sold at a tax sale, which was subsequently held valid by the Commonwealth Court.[2] The sale resulted from the nonpayment of certain local property taxes in 1966 and 1967 and was conducted pursuant to the Real Estate Tax Sale Law, Act of July 7, 1947, P. L. 1368, and amendments thereto, 72 P.S. §5860.101 *et seq.* Section 609 of that law provides that a sale of the type held "shall discharge the lien of every obligation, claim, lien or estate with which said property may have or shall become charged, or for which it may become liable, except no such sale shall discharge the lien of any ground rent or mortgage which shall have been recorded before such taxes became liens, and which is or shall be prior

---

made junior in lien and operation and postponed and subordinated to the lien, operation and payment and distribution upon any judicial sale of and under the Judgment above recited . . .

"The postponement and subordination of said Mortgage and the Bond and Warrant accompanying the same to have the same force and effect as though the said Judgment had been entered of record prior to the time of the execution, delivery and recording of the Mortgage and the Bond and Warrant accompanying the same.

"In the event of default under any of the terms and conditions of the said postponed and subordinated Mortgage, resulting in foreclosure proceedings thereon, or on the accompanying Bond and Warrant, such proceedings shall be especially advertised as being under and subject to the lien, operation and payment and distribution upon any judicial sale of and under the said Judgment . . ."

One of the subordination agreements contained an additional provision as to subordination reciting an agreement by the judgment creditor to make a loan to the mortgagors "only if and upon the condition that the lien, operation and payment and distribution upon any judicial sale of and under the Judgment shall be prior and superior to the lien and operation of the Mortgage and the Bond and Warrant accompanying the same . . ."

[2] The tax sale was held valid upon a challenge by the mortgagors in *Tax Claim Bureau v. Wheatcroft*, 2 Pa. Commonwealth Ct. 408, 278 A.2d 172 (1971), *aff'g Tax Claim Bureau Upset Sale*, 93 Montg. 170 (1970).

to all other liens, except other mortgages and ground rents." *Id.*, art. VI, 72 P.S. §5860.609.

Following the tax sale and a determination of its validity, two lawsuits developed. On January 19, 1972, the purchaser at the sale, R. Wheatcroft, sued Herbert and Esther Auritt in ejectment for possession of the property and for mesne profits. On July 6, 1972, an assignee of the mortgagees, G.A.G. Corporation, sued the mortgagors, Herbert and Esther Auritt, and the tax sale purchaser, R. Wheatcroft, in a mortgage foreclosure action; the assignee had previously asserted possession of the premises, following an alleged default in the mortgage, and entered into an agreement with the mortgagors in which they contracted to remain on the property on a rental-type basis.[3] Both suits are involved on appeal.

In the ejectment action, the lower court granted judgment as to possession in favor of R. Wheatcroft, the plaintiff and tax sale purchaser, on August 17, 1972, and judgment was entered shortly thereafter, on August 29, 1972. In response to a petition of the assignee over a month later, however, the court temporarily stayed any eviction of Herbert and Esther Auritt by the purchaser. In the mortgage foreclosure action, the court granted summary judgment in favor of the defendant and tax sale purchaser, R. Wheatcroft, and declared the mortgage lien discharged, on December 1, 1972. In the same order, the court removed the stay on eviction.

---

[3] The assignment of the mortgage by the mortgagees took place on June 27, 1969. On June 22, 1972, the assignee, asserting possession of the mortgaged premises, entered into an agreement with Herbert and Esther Auritt, wherein a substantial default in payment on the mortgage was recited and wherein the mortgagors agreed that their continued occupancy of the premises was through the assignee. The agreement did not purport to invest the assignee with any ownership held by the mortgagors.

The opinion by Judge Lowe accompanying the order of December 1 reveals that the court's decision was based upon a holding that the lien of the assignee's mortgage, by virtue of its contractual subordination, had been divested by the tax sale in question. From the allowance of eviction on behalf of the tax sale purchaser, and from the summary judgment in favor of said purchaser, the assignee has appealed. We affirm.

Issues requiring determination on appeal are: whether the present appeals are within the jurisdiction of, and should be transferred to, the Commonwealth Court; in the ejectment action, whether the present appeal should be quashed and whether the lower court's ruling on the merits was correct; and, in the mortgage foreclosure action, whether the mortgage lien in question survived the tax sale and whether the appellant is entitled to rely upon its survival. Hereinafter R. Wheatcroft is referred to as appellee and G.A.G. Corporation is referred to as appellant.

## Jurisdiction

Appellee contends that the instant appeals should be transferred to the Commonwealth Court, pursuant to §503 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. V, 17 P.S. §211.503 (1973-74 Supp.). That section provides for the intrastate transfer to the proper court of an appeal brought in a Pennsylvania court lacking jurisdiction.[4]

It is argued that the present appeals are from cases in which the application and interpretation of an act of the General Assembly regulating the affairs of a political subdivision are drawn in question—the act referred to being §609 of the Real Estate Tax Sale Law,

---

[4] Act of July 31, 1970, P. L. 673, art. V, §503(b), 17 P.S. §211.503(b).

124

Act of July 7, 1947, P. L. 1368, art. VI, 72 P.S. §5860.609 (discharge and preservation of liens in applicable tax sale). The point is made that appeals from final common pleas court orders in such actions are within the exclusive jurisdiction of the Commonwealth Court, under the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. IV, §402(4)(i), 17 P.S. §211.402(4)(i) (1973-74 Supp.).[5]

We are unable to agree, however, with the premise that a provision effecting the discharge and preservation of liens in a tax sale is one "regulating the affairs of political subdivisions."[6] "In construing a statute, or one of its sections, the terms are to be taken and understood according to their ordinary and usual significance, that is, what is generally understood as applied to the purpose or object to be accomplished by the statute." *Lehigh & Wilkes-Barre Coal Co. v. Riley,* 297 Pa. 522, 525, 147 A. 605, 606 (1929). Words are presumed used in their popular sense. *Marsh v. Groner,* 258 Pa. 473, 102 A. 127 (1917).

The "affairs" of a political subdivision, for purposes of a statute conferring jurisdiction on a court of authority and expertise in administrative and governmental areas,[7] are the business of the subdivision—its

---

[5] "The Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following cases [with certain exceptions not here relevant]: ... (4) All actions or proceedings ... where is drawn in question the application, interpretation or enforcement of (i) any act of the General Assembly regulating the affairs of political subdivisions, municipality and other local authorities ...." Act of July 31, 1970, P. L. 673, art. IV, §402(4)(i), 17 P.S. §211.402(4)(i) (1973-74 Supp.).

[6] *Id.*

[7] The tenor of Commonwealth Court appellate jurisdiction is evident in the following excerpts from a 1970 article by Philip W. Amram and Sidney Schulman, which included an analysis of cer-

general operations. *See Goes v. Coale's Distrib. Lumber Co.,* 142 Pa. Superior Ct. 479, 16 A.2d 720 (1940)

tain effects of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, 17 P.S. §211.101 *et seq.* (1973-74 Supp.).

"[T]he Supreme Court now must take directly all appeals in Orphans' Court matters and in equity cases irrespective of amount, except equity proceedings involving State and local government, which will be within the appellate jurisdiction of the Commonwealth Court. The Supreme Court will also have exclusive direct appellate jurisdiction and must take appeals in matters involving felonious homicide, the right to public office, contempts, suspension, and disbarment and decisions invalidating as unconstitutional treaties, laws, acts of assembly, and home rule charters, but not local ordinances or resolutions, which are within the jurisdiction of the Commonwealth Court.

". . .

"Appeals in zoning matters will no longer go to the Supreme Court, but to the new Commonwealth Court. Appeals in Eminent Domain matters will now go to the Commonwealth Court.

"To compensate for the increased jurisdiction of the Superior Court in assumpsit and trespass cases, its former jurisdiction involving appeals from state and local administrative agency decisions is transferred to the new Commonwealth Court. Its present criminal jurisdiction remains largely intact, but appeals from criminal prosecution in the Common Pleas under State Administrative regulations, or under municipal ordinances will now go to the Commonwealth Court.

"Appeals from the Common Pleas in Workmen's Compensation and Occupational Disease Appeals are transferred to the Commonwealth Court, as are direct appeals from the Unemployment Compensation Board of Review and the Public Utility Commission.

"The Commonwealth Court will also have direct exclusive appellate jurisdiction on appeals from administrative agencies of the Commonwealth, except appeals from revocation or suspension of motor vehicle operators license, Liquor Code appeals, and Workmen's Compensation and Occupational Disease appeals, which go first to the local common pleas courts and then to the Commonwealth Court. Generally all matters involving local government, home rule charters or ordinances and criminal violations thereof will be appealed to the Commonwealth Court except that matters involving the right of the Commonwealth or a political subdivision to create or issue indebtedness will, because of the need for speedy resolution, be appealable directly to the Supreme Court." Amram & Schulman, *The*

("affairs" of employer said to have been held to be practically analogous to "business" and to refer to "general operations" carried on by employer, in workmen's compensation statute). In no sense are the general operations of a political subdivision regulated by the discharge and preservation of liens in a tax sale; in no sense is the business of the subdivision governed by such consequences.

In *Duggan v. 807 Liberty Ave., Inc.*, 447 Pa. 281, 288 A.2d 750 (1972), the Pennsylvania Supreme Court declined to adopt an expansive interpretation of "officer of the Commonwealth" which would have included within its scope the District Attorney of Allegheny County, under legislation conferring on the Commonwealth Court jurisdiction over appeals from common pleas court orders in civil cases in which an officer of the Commonwealth, acting in his official capacity, is a party.[8] "More properly, the group envisioned there," the Court stated, "were the officers of state agencies and departments, thus concentrating administrative law appeals in one tribunal." *Id.* at 287, 288 A.2d at 753. A similar regard to the character of the Common-

---

*New Judicial Article and Its Implementation*, 42 Pa. Bar Ass'n Q. 9, 10-11 (1970).

For histories of the Commonwealth Court, see Comisky, *Commonwealth Court Investiture*, 42 Pa. Bar Ass'n Q. 25 (1970), and Lipez, *History of the Commonwealth Court*, 1 Pa. Commonwealth Ct. vii (1971).

[8] "The Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following cases [with certain exceptions not here relevant]: (1) All civil actions or proceedings to which the Commonwealth or any officer thereof, acting in his official capacity, is a party, except actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court . . . ." Act of July 31, 1970, P. L. 673, art. IV, §402(1), 17 P.S. §211.402(1) (1973-74 Supp.).

wealth Court is necessary to the present analysis of its jurisdiction.[9]

## Ejectment Action

Appellee contends that the appeal in the purchaser's action in ejectment against Herbert and Esther Auritt should be quashed because the appellant: (1) was not a party to the suit, (2) has not briefed the issues involved, and (3) has no right of possession.

The ejectment appeal is from that part of the lower court's December 1, 1972, order removing a stay on enforcement of the ejectment judgment.[10] Although the appellant was not originally a party to the ejectment proceedings, it unquestionably has an appealable interest in the lower court's disposition of its petition to stay enforcement of the ejectment. That interest is not affected by a determination as to which action the disposition was incident to; no useful purpose would be served by an analysis of the appeal's label. The issue of discharge or preservation of the mortgage lien herein involved, which is critical to the appellant's argument against eviction of persons with whom it made a rental-type agreement, has been briefed by the appellant. Given that fact, we are reluctant to find a

---

[9] Appellee supports the alleged jurisdiction of the Commonwealth Court with the additional assertions that that Court has previously considered a case involving the validity of the tax sale in question (see note 2 supra and text infra) and that the appellant relies upon the effect of the decision therein in its argument (see text infra). The Appellate Court Jurisdiction Act of 1970, however, does not permit transfer by this Court of a case to another court merely because it bears a relationship to, or may involve interpretation of, a prior case in that court. Act of July 31, 1970, P.L. 673, 17 P.S. §211.101 et seq. (1973-74 Supp.).

[10] In the order, the lower court discharged a rule issued on the appellant-assignee's petition to stay a writ of possession in the suit, and dismissed the petition.

waiver as to the appeal in question, expressly taken. The assertion that the appellant has no right to possession of the premises relates to the merits of the appeal, not its permissibility. For these reasons, the appeal from the lower court's removal of its stay on eviction will not be quashed.

On the merits, the ruling of the court below was clearly correct and must be affirmed. The indefeasible title of a purchaser of land at a valid tax sale such as that conducted carries with it a right to possession superior to any held by a party in the position of a mortgagee whose lien was permitted by statute to survive the sale. *Day v. Ostergard,* 146 Pa. Superior Ct. 27, 21 A.2d 586 (1941) (tax sale purchaser of realty held entitled to possession in declaratory judgment action brought by first mortgagee). This rule of law is incompatible with the present attempt of the appellant to deny the purchaser possession.

Furthermore, as will be discussed in the text following, we hold that the mortgage lien of the appellant did not, in fact, survive the tax sale and that the appellee may rely upon its discharge. It is not necessary to consider whether additional grounds may exist for affirmance of the ruling on the stay.

*Mortgage Foreclosure Action*

Appellant, as assignee of a mortgage on land subjected to a tax sale, contends that its lien survived the sale. It further contends that the appellee, purchaser in the sale, should be precluded from relying upon any discharge of the lien; the assertion is made that the appellee concealed a belief in discharge in a prior case, taking a position inconsistent with the present one and succeeding in obtaining its adoption by the Commonwealth Court.

With respect to the survival of the lien, it is necessary to examine both §609 of the Real Estate Tax Sale Law, Act of July 7, 1947, P. L. 1368, art. VI, 72 P.S. §5860.609, and the aforementioned subordination agreements in which the status of the mortgage was altered with respect to the judgment liens.

Section 609, quoted previously in the text, provides that a sale of the present type discharges the lien of every obligation, claim, lien or estate other than that of a ground rent or mortgage being "prior to all other liens, except other mortgages and ground rents," and of record before the tax lien came into being. Act of July 7, 1947, P. L. 1368, art. VI, 72 P.S. §5860.609. If the subordination agreements in question reversed the order of priority between the appellant's mortgage lien and the judgment liens, rendering the former inferior in rank[11] to the latter, the appellant's contention for survival of the mortgage lien must fail.

It appears to be appellant's position that under the subordination agreements, subordination was subject to either of two conditions precedent—a sale of the property under a writ executed by one of the judgment creditors or a sale initiated by the mortgagees. Neither condition having occurred at the time of the tax sale, it is argued that no subordination had occurred. The conditional nature of the subordination is inferred by appellant from language in the agreements which sub-

---

[11] Priority, with respect to a lien, commonly refers to the superiority of the lien, not its position in time. *See* Black's Law Dictionary 1357 (4th ed. 1951) ("prior lien"). "One of the fundamental rules of construction is that, if the language or words used [in a statute] have come to have a meaning which those who were or ought to have been learned in the law must be supposed to have understood, and with reference to which the act must be presumed to have been framed and passed, the court must accept such construction . . . ." *St. Charles Bldg. & Loan Ass'n v. Hamilton*, 319 Pa. 220, 223, 179 A. 604, 605 (1935).

ordinates the mortgage lien and accompanying bond and warrant "to the lien, operation and payment and distribution upon any judicial sale of and under" the judgments; from language providing that in the event of mortgage foreclosure proceedings or proceedings on the bond and warrant, such proceedings were to be advertised as being "under and subject to the lien, operation and payment and distribution upon any judicial sale of and under" the judgments; and from language in the future tense, following a reference to judicial sale under the judgments, providing that the judgments "shall and will become a first lien."

With regard to the last quotation, the use of the future tense is ascribable to the fact that it appears in a paragraph dealing with the intentions of the parties; the passage expresses the expectation of the parties as to what the agreement will accomplish. An interpretation of the former two passages which would exclude the immediate existence of a priority in favor of the judgment liens would be inconsistent with the following passage in the agreements: "The postponement and subordination of said Mortgage and the Bond and Warrant accompanying the same to have the same force and effect as though the said Judgment had been entered of record prior to the time of the execution, delivery and recording of the Mortgage and the Bond and Warrant accompanying the same." It is a well-known rule that "in construing a contract each and every part of it must be taken into consideration and given effect if possible, and that the intention of the parties must be ascertained from the entire instrument. An interpretation will not be given to one part of a contract which will annul another part of it . . . ." *Neal D. Ivey Co. v. Franklin Associates, Inc.*, 370 Pa. 225, 231-32, 87 A.2d 236, 239 (1952).

Furthermore, it is obvious that the appellant's argument confuses the existence of a priority with its eventual utilization. The clear superiority of the judgment liens over the mortgage lien was established when the contracts of subordination were made; it was not necessary that an exercise of priority rights occur.

We must conclude that by virtue of the subordination agreements the judgment liens had become prior to the appellant's mortgage lien, and that by virtue of the statute the lien was discharged in the tax sale. Appellant contends, however, that the appellee is estopped from relying upon the discharge.

In June of 1971, the Commonwealth Court handed down a decision upholding the validity of the tax sale in which the property under present consideration was sold: *Tax Claim Bureau v. Wheatcroft*, 2 Pa. Commonwealth Ct. 408, 278 A.2d 172 (1971), *aff'g Tax Claim Bureau Upset Sale*, 93 Montg. 170 (1970). In its decision, the Court held that all requisite notice procedures had been followed with respect to the sale and that the sale price had not been shown grossly inadequate. The latter conclusion was reached in connection with a belief that the lien of the mortgage of which appellant is assignee had survived the sale.[12] Appel-

---

[12] The Court stated: "Without passing on [whether gross inadequacy of price alone would invalidate the sale in question], we note that in conformity with the requirements of the Real Estate Tax Sale Law, . . . 72 P.S. 5860.609, the buyer purchases subject to any outstanding mortgage obligations thereon. In the instant case, the purchase is subject to a mortgage in the amount of $15,000.00. This, then, is a total consideration of $17,404.55 for a home purchased seven years ago for the price of $22,500.00. We fail to find the existence of a 'gross inadequacy of price' to which appellants [Herbert and Esther Anritt] point. . . . The presumption is that the price received at a public sale is the highest and best available." *Tax Claim Bureau v. Wheatcroft*, 2 Pa. Commonwealth Ct. 408, 414-15, 278 A.2d 172, 176 (1971).

lant contends that the appellee's argument in this prior suit assumed the survival of the lien and concealed an opposing belief; that the assumption was adopted by the Court; and that the appellee should be precluded from relying upon a contrary position here.

It is apparent that the doctrine of collateral estoppel will be of no avail to the appellant. "[I]n order for . . . collateral estoppel . . . to apply, there must be a question of fact essential to the judgment actually litigated and determined by a valid and final judgment." *Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n,* 453 Pa. 43, 46, 308 A.2d 98, 100 (1973). "Where the [former and present] actions are upon different claims the former judgment 'operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict is rendered.' " F. James, Jr., Civil Procedure §11.18, at 575 (1965) (citation omitted). The matter of the mortgage lien's loss of priority by virtue of provisions in the subordination agreements was not actually litigated in the former suit, nor was a determination on it made a basis of the Commonwealth Court's decision. Indeed, it is appellant's position that a concealment of the present contention of the appellee occurred in the prior suit.[13]

The appellant's argument that appellee is estopped from relying upon discharge of the mortgage lien by virtue of prior concealment and inconsistent position must also be rejected. The burden of proof as to an estoppel is upon the party asserting the estoppel. *Ham v. Gouge,* 214 Pa. Superior Ct. 423, 257 A.2d 650 (1969). Even should it be assumed that sufficient other requisites are present to justify the type of judi-

---

[13] It is unnecessary to determine whether collateral estoppel would be applicable under the circumstances had the fact involving estoppel been actually litigated and determined in the prior suit.

cially related estoppel advocated by appellant,[14] neither a concealment nor an inconsistent position in the prior proceeding has been demonstrated by the appellant. Neither the records on this appeal nor any of the opinions in the various suits under consideration show that the appellee was even aware in the former suit of the subordination agreements, let alone concealed a belief as to their effects; the pleadings below contain no allegation of such concealment. As to inconsistency of position, the pleadings of the appellant again contain no such allegation.[15] On appeal, the briefs of the parties are somewhat in conflict, but an excerpt provided by the appellee from appellee's brief in the Commonwealth Court would seem to support that party's contention that the argument made with respect to the mortgage referred only to the equity of Herbert and Esther Auritt in the premises, not to the discharge or preservation of liens. In any event, the

---

[14] With respect to a rule against assuming inconsistent positions in judicial proceedings, it has been said that the following have been enumerated as essential elements: "(1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change." 28 Am. Jur. 2d Estoppel and Waiver §70, at 698 (1966). Certain of these asserted requisites are obviously not present in this proceeding; in view of the ground upon which we decide the present issue, it is unnecessary to determine the conditions under which an estoppel might exist under Pennsylvania law should an inconsistent position or concealment in a prior judicial proceeding be proven.

[15] One of the pleadings of the appellant asserts an estoppel of the appellee on the basis of the "law of the case." Such an argument is clearly inapplicable where different cases are involved (see 9 Standard Pennsylvania Practice 586-91 (1962)), and the contention is not discussed in the opinion of the court below.

appellant has not put this Court in a position to reverse the lower court by finding the existence of an estoppel.

The order and judgment of the lower court must therefore be affirmed.

---

CONCURRING AND DISSENTING OPINION BY SPAETH, J.:

I agree with Judge JACOBS that this court has jurisdiction. I also agree with his interpretation of the subordination agreements. I cannot, however, agree that appellee should be permitted to take advantage of the statute that would discharge the subordinated mortgage. To permit this, by allowing the decision of the court below to stand, is to permit appellee to obtain for $2,400 a property purchased seven years earlier for $22,500. Since appellee will have achieved this coup as a result of the position he maintained before the Commonwealth Court, when the fairness of the tax sale was litigated, I would hold him estopped to deny that the mortgage lien remains in effect.

In declining to hold appellee estopped, Judge JACOBS makes two points. The first point is that "[t]he matter of the mortgage lien's loss of priority . . . was not actually litigated [before the Commonwealth Court] . . . nor was a determination on it made a basis of [that court's] decision". The second point is that "[n]either the records on this appeal nor any of the opinions in the various suits under consideration show that the appellee was even aware in the . . . suit [before the Commonwealth Court] of the subordination agreements, let alone concealed a belief as to their effects . . . ."

With respect to Judge JACOBS' first point: The fact that the mortgage lien's loss of priority was not litigated as a distinct issue before the Commonwealth Court is a reason why appellee should be estopped in this case, not a reason why he should not be. The mort-

gagees were not parties before the Commonwealth Court and were therefore not in a position to bring to that court's attention the issue of whether the mortgage lien had lost its priority by virtue of the subordination agreements. It was not to appellee's interest (or so he thought) to raise the issue, and he did not. Thus, while it is true that the Commonwealth Court's decision does not rest upon "a determination" of the mortgage lien's priority, that is only because appellee by his silence avoided a determination.

Sometime a litigant's silence will have no effect. Here, however, appellee's silence induced the Commonwealth Court to base its decision upon the assumption, rather than upon a formal determination, that the mortgage lien had not lost its priority.

There can be no doubt about this. The court said that the only basis for its decision that appellee's payment of $2,400 was not grossly inadequate was because "the purchase is subject to a mortgage in the amount of $15,000.00." *Tax Claim Bureau v. Wheatcroft*, 2 Pa. Commonwealth Ct. 408, 414 (1971). In making this statement the court must have relied on the last paragraph of appellee's brief, which read as follows: "The appellants' [*i.e.*, Mr. and Mrs. Auritt] inadequate case for proving the fair market value of the subject premises and hence a would-be inadequacy of consideration also includes evidence as to mortgage and judgment liens against the premises. The evidence is summarized here *so that the Court will know* that the "equity" of the appellants in the premises was not as great as the allegations of the petition would indicate. At pages 7 and 9 of the depositions of May 16, 1969 (Rec. pp. ) [*sic*] the appellant states that the property was subject to a mortgage lien of $15,000 and judgment liens of $10,000 and $4,000. Thus the equity in the premises is far less than the alleged but unproven market value." (Emphasis added.)

I recognize the argument that this paragraph is ambiguous. However, I find no ambiguity. To say that an assertion ("the consideration was inadequate") is not true because of a fact ("the property was subject to a mortgage lien") is either a representation that the fact is true, or else it is nonsense.

With respect to Judge JACOBS' second point: I do not see how it can be maintained that "the records on this appeal" do not show that "appellee was . . . aware . . . of the subordination agreements . . . ." On pages 26a and 31a of the record it appears that both subordination agreements were recorded in Montgomery County in the mortgage book, one on November 12, 1967, and the other on November 20, 1967. The tax sale was on September 9, 1968. When appellee bought the property at the tax sale he must have known not only of the recorded mortgage but of the recorded subordination agreements. Since he knew of the subordination agreements, he must have had a theory of what they meant, either that they did upset the mortgage's prior lien, or that they did not. Yet when arguing the issue of adequacy of consideration to the Commonwealth Court, he stated that "the property was subject to a mortgage lien", and made no mention of the subordination agreements. If I were a Commonwealth Court judge, I should have no hesitancy in concluding that appellee had "concealed a belief as to [the subordination agreements'] effects . . . ."

It may be granted that this case does not fit into the usual mold. Usually it is pertinent to ask whether a party has "changed his position" in "reliance upon" the other party's alleged misrepresentation. This case defies this standard analysis because here it is the Commonwealth Court that has relied upon a misrepresentation; and it is the court's decision that has changed the parties' positions. This distinctiveness, however, does not preclude the application of the doctrine of

estoppel. " 'An estoppel may be said to arise when a person executes a deed, or is concerned in or does some act, either of record or in pais, which will preclude him from averring anything to the contrary'. 10 R.C.L. p. 675; see, too, Fedas v. Ins. Co., 300 Pa. 555, 560; Atkins v. Payne, 190 Pa. 5, 200 Pa. 557; Ebert v. Johns, 206 Pa. 395; Sargent v. Johns, 206 Pa. 386; Com. v. Moltz, 10 Pa. 527, 530; Keefer v. Keefer, 9 Pa. Superior Ct. 53; 21 C.J. 1060." *General Contract Purchase Corp. v. Bitomski,* 102 Pa. Superior Ct. 266, 273, 156 A. 727, 729 (1931). Since appellee stated to the Commonwealth Court that "the property was subject to a mortgage lien", and since the court acted on that proposition to his benefit, he should be precluded now from "averring anything to the contrary", when by averring to the contrary he seeks to divest a lien for which value was apparently given, and thereby to obtain for $2,400 a property purchased for $22,500.

A qualification should be noted. I do not suggest that appellant-assignee should necessarily prevail. Whether the assignee in fact stands in the shoes of the mortgagees does not appear. It does not because there has been no trial on the merits, the court below having granted appellee's motion for summary judgment.

The motion granting summary judgment in the mortgage foreclosure action should be reversed and the matter remanded for trial; the judgment in the ejectment action should be reversed so that the court below may consider whether it wishes again to stay eviction pending final decision in the foreclosure action.

CERCONE, J., joins in this concurring and dissenting opinion.