441 A.2d 1285

**Roger E. BUCHANAN and Dorothy Buchanan, et al.**

v.

**CENTURY FEDERAL SAVINGS & LOAN ASSOCIATION, et al.**

**Appeal of EQUIBANK.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1981.

Filed Feb. 19, 1982.

Petition for Allowance of Appeal Denied June 30, 1982.

See also, 295 Pa.Super. 391, 441 A.2d 1288.

Joan Feldman, Pittsburgh, for appellants.

Michael P. Malakoff, Pittsburgh, for appellees.

Before WICKERSHAM, WIEAND and BECK, JJ.

BECK, Judge:

This appeal arises from the interpretation of a settlement agreement which settled an action by classes of mortgagors against several mortgagee banks in both the federal and state courts. The agreement was executed by all parties on January 22, 1976. By its terms, the settlement agreement was subject to, and contingent upon, court approval in both the state and federal actions. The hearing judge found as a fact that it was normal to, and the parties did in fact, contemplate that court approval would take a lengthy period of time. Final court approval was forthcoming on April 19, 1979.

The portion of the agreement giving rise to controversy necessitating a court ruling from which this appeal is taken reads as follows:

§ 3.03. Beginning on the date of final approval of this Agreement, but *retroactive* to January 1, 1976, the Defendants either

(a) Shall pay at least two (2) percent interest per annum to their Residential Mortgagors on sums paid to a particular Defendant equivalent to one-twelfth the annual hazard insurance premiums, annual real estate taxes and/or assessments or other charges;

(b) Shall credit such advance payments against the principal balances on such mortgage loans; or

(c) Shall grant, by writing separate from the mortgage and bond or note, such mortgagors the option either of paying their annual hazard insurance premiums, annual real estate taxes and/or assessments or other charges themselves, or of making such payments equivalent to one-twelfth of such amounts each month to Defendants, in which case, no interest need be paid by Defendants on such payments.

If interest is to be paid by a Defendant under Subsection (a) herein, it shall be calculated in a manner no less favorable to Plaintiffs than 2 percent simple interest, on

the averages of the month-end escrow balances, paid or credited annually.

*    *    *    *    *    *

(emphasis supplied)

Following court approval of the agreement in 1979, appellant herein elected under § 3.03(c) to grant its mortgagors the option of either making insurance and tax payments themselves or escrowing such payments with appellant at no interest. Prior to such election, appellant had required its mortgagors to escrow such payments with appellant. On April 10, 1980, the "Plaintiffs at Equibank," appellees herein, filed a Motion to Enforce Settlement Agreement alleging that the failure of appellant to pay two percent interest for the period of January 22, 1976 to the date appellant offered its mortgagors the settlement option as to escrow constituted a refusal to perform under the settlement agreement.

On July 15, 1980, the court below entered an order stating "[W]e find that Equibank has failed to comply with the terms of the Agreement, particularly Section 3.03 thereof, and it is ORDERED that Equibank pay 2% interest per annum to their Residential Mortgagors on sums paid to Equibank by said Residential Mortgagors equivalent to one-twelfth of the annual hazard insurance premiums, annual real estate taxes and/or assessments or other charges from January 1, 1976 to April 19, 1979; the sums due said Residential Mortgagors as calculated aforesaid shall bear interest at the rate of 6% per annum from the due dates thereof; . . . ."

The parties' briefs and the opinion of Judge Silvestri reflect general agreement as to the facts and as to the applicable law. Citing the same cases, all agree as do we that the principles of contract construction are applicable to interpretation of this settlement agreement: *United States v. I.T.T. Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1976); *Florida Educational Association v. Atkinson*, 481 F.2d 662 (5th Cir. 1973). Appellant also recognizes, as pointed out in the opinion of Judge Silvestri, that the court may not alter the terms of the agreement, but

must construe the entire agreement, giving effect to all parts of the agreement: *G.A.G. Corporation v. Auritt,* 226 Pa.Super. 118, 312 A.2d 441 (1973) citing *Neal D. Ivey Co. v. Franklin Associates,* 370 Pa. 225, 87 A.2d 236 (1952). Appellant, however, disagrees as to the application of these principles to the facts in this case.

Appellant asserts that court approval was a condition precedent to its performance under the terms of the contract and that no performance was required of it until this condition occurred on April 19, 1979, citing *National Products Co., Inc. v. Atlas Financial Corp.,* 238 Pa.Super. 152, 364 A.2d 730, 734 (1975). While this is undoubtedly true under both the law of Pennsylvania and the terms of the contract itself, the appellant's further assertion that performance of the provisions relating to retroactivity became impossible because of long delay in court approval and its selection of an option which does not specifically require the payment of money is simply an attempt to read the retroactivity provision out of the contract. The phrase "retroactive to January 1, 1976" clearly applies to each of the subsections (a), (b) and (c). It is clear that a delay was contemplated and that it was intended that all of the class members receive a benefit effective the date set forth in the agreement.[1]

We regret, as did the court below, that the parties did not more clearly spell out the means for making each of these provisions retroactive. However, class action settlement agreements are generally the product of heated adversary debate, the input of many, and the reluctance of those on all sides to delay final agreement on the basis of a phrase or a word. Appellant herein had as much opportunity as anyone else to seek clarification by amendment[2] and did not do so.

1. Those class members who paid mortgages in full during the period January 1, 1976 to April 19, 1979 would receive no benefit whatsoever, for example, should appellant's interpretation of the agreement be accepted.

2. Two amendments postdating the original Settlement Agreement were agreed to by the parties and were part of the agreement as approved by the respective courts.

It may not now seek a windfall on the basis of this oversight.

Had appellant offered the option to its mortgagors to cease escrowing their payments with appellant on January 22, 1976, those mortgagors would have had the use of their money for the interim period to April 19, 1979. A reading of the agreement as a whole reveals that the parties envisioned that the means for compensating mortgagors for the forcible escrowing of such moneys was negotiated at a settlement figure of two percent (2%) per annum based upon monthly escrow balances. The court below found it to be the intention of the parties that retroactivity be accorded by the payment of said two percent (2%) for the period from January 1, 1976 to the date appellant exercised its option under the agreement. We agree.

The order appealed from is affirmed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, Dissenting:

I respectfully dissent. The majority, by its interpretation of the settlement agreement, has effectively deleted therefrom and has rendered totally meaningless that portion of Section 3.03(c) [1] which provides "... in which case, no interest need be paid by Defendants ...."

1. Section 3.03 of the settlement agreement is as follows:
   § 3.03. Beginning on the date of final approval of this Agreement, but retroactive to January 1, 1976, the Defendants either:
   (a) Shall pay at least two (2) percent interest per annum to their Residential Mortgagors on sums paid to a particular Defendant equivalent to one-twelfth the annual hazard insurance premiums, annual real estate taxes and/or assessments or other charges;
   (b) Shall credit such advance payments against the principal balances on such mortgage loans; or
   (c) Shall grant, by writing separate from the mortgage and bond or note, such mortgagors the option either of paying their annual hazard insurance premiums, annual real estate taxes and/or assessments or other charges themselves, or of making such payments equivalent to one-twelfth of such amounts each month to Defendants, in which case, no interest need be paid by Defendants on such payments.

This clause, in my judgment, refers to and modifies the mortgagors' option immediately preceding it in § 3.03(c), i.e., "... of making such payments equivalent to one-twelfth of such amounts each month to Defendants ...." The clause defines the rights of the parties only if a defendant bank offers to mortgagors the option provided for in section 3.03(c) and only if a mortgagor elects to continue escrowing real estate taxes, insurance premiums and other charges. If the mortgagor so elects, the mortgagee bank need not pay interest to such mortgagor. On the other hand, if the mortgagor elects to withdraw moneys previously paid in escrow and to pay real estate taxes, insurance premiums and other charges himself, then the mortgagee bank is required to pay interest on escrow sums paid after January 1, 1976.

This interpretation gives effect to both the "retroactivity" provision and the "no interest" clause. Moreover, it provides a settlement that is reasonable and clearly consistent with the expressed intent of the parties. That it is consistent with the actual intent of the parties becomes apparent when we realize and appreciate that none of the parties anticipated or contemplated the tortuous path and three year delay required to obtain court approval of the settlement agreement. If court approval had been forthcoming in a year or less, the fairness and reasonableness of this interpretation, would be obvious.

I would remand for the entry of an order consistent with this expressed intent of the parties.

If interest is to be paid by a Defendant under Subsection (a) herein, it shall be calculated in a manner no less favorable to Plaintiffs than 2 percent simple interest, on the average of the month-end escrow balances, paid or credited annually. At least annually, on or before the 15th day of each February subsequent to December 31, 1976, any Defendant, if it chooses to pay interest as aforesaid, at its option shall either issue and deliver a check for said interest to each mortgagor or shall credit the mortgage account or the mortgage escrow account for the amount of interest accrued to the end of the preceding calendar year.